Professor Corzine, you're here again. Yes, sir. I believe this case doesn't talk. Well, let's see. Oh, you're not going to talk first. I'm sorry. Mr. Cassell? Castle. So I've really messed up twice before I got started here. And I apologize to you for both of them. Pleased to hear from you, sir. Good morning. May it please the court. I wish to make an admission before your honors pummel me and probably ask me some questions about why I'm here today. After the dismissal of the first appeal in this case, Judge Gregory, you were on that panel, as I recall. I was so eager to get the attorney fee issue resolved that I read the prior order of dismissal too narrowly. I thought all I needed to do was to get the amount of fees determined and then get back up here in this court to get the district court reversed. I was wrong, but I want to explain to the court what actually happened. In spite of that ruling, when we went back down to the district court, after the defendant submitted his bill of costs, I presumed that the court might rule favorably because the defendant was ordered to segregate his time from his entire fee application of over $25,000 to just the time associated with the motion to dismiss that he brought under Twombly and the appearance in the courtroom in Asheville, North Carolina with my co-counsel, at that time Terry Smith and John Hunter, local counsel. Even though the defendant did not segregate their time in violation of the magistrate's order, and even though the defendant did not respond to my objection thereto, the court went ahead and made its own segregation of the time and determined that approximately $13,000 plus in attorney fees and expenses would be awarded to the defendants and that the case would be stayed until that were paid. I admit I was shocked by that ruling, and Mr. Hunter and I were so eager to come back up here that we did not take a good look at the collateral order doctrine. In fact, we did not take a good look at that until you ordered me to take a good look at that in supplemental briefing. Mr. Hunter and I did that briefing last month, and I realized at that time that although this issue is an extremely important issue to Stella Andrews and to her counsel, it's not the stuff of which the federal courts and the Supreme Court has said should be part of collateral order of interlocutory appeals. Over the last few years, as you gentlemen know, the – So you're telling us we don't have jurisdiction? It appears to me that you don't have jurisdiction. I do not want to tell you what to do, but in fact, having read the law as it's been narrowed over the last decade by the Supreme Court – in fact, I think the leading case here I cited, COBRA, talks about – So what would happen if we were to agree with you that we appointed amicus, and now we've got two parties here telling us we don't have jurisdiction? And so just hypothetically, so to speak, if we send this back, are you saying that you would then either pay the exaction in order to cure any jurisdictional problem or post the bond or – I don't think a payment or bond would cure the jurisdictional issue in this court. Back there, we will file a motion to have the fees paid into the clerk's registry. And if that's denied? We've thought about that. We may be simply in a position where we'll have to pay that money to a defendant who claims he's insolvent and has no counsel representing him in the court below, and we'll just have to try to get it back after we get a judgment entered by the court down the road. Well, you could refuse to pay, and the judge could dismiss it. Then you could appeal the final order. I'm not suggesting you'd want to do that. That is an option, right? I suppose as long as it's not falling under that doctrine of creating the air so I can bring it up. Although the court gave you six months to pay it. Is that right? Honestly, I don't remember. There was some significant time given. So the case is just going to rot on the vine of the district court? No, it's not going to rot on the vine. We will have to make a decision because it was May of 2010 when we filed this action. So it's been almost five years. Yes, and we made a decision in the court below when the court told us, I'm going to probably dismiss this under Twomley. Why don't you dismiss and refile? We did that. Looking back, that may have been a mistake. That was the magistrate judge. That was the magistrate judge, yes. It was spur of the moment between Mr. Smith and Mr. Hunter. I was in trial in Kansas and could not be there. It's a decision you make in the heat of battle. A recess was taken. Everything was discussed, and that was the decision that was made. And as a result, doing what the magistrate suggested, you have the transcript. We find ourselves now up here two and a half, almost three years later. If you win this lawsuit, if you won everything you were after, would there be any pocket for you to reach into? From our investigation of Mr. Hodges, we believe there clearly is a pocket. Possessor liability kind of thing or something? Well, all his LLCs, in our opinion, were basically shams. I see. You'd go after him. Yes, we are going after him. We know where he lives. The problem is it's been four and a half, five years. Who knows where the assets are? But that's what we're facing, spending more money, maybe spending the $13,000. Probably if past conduct mirrors future conduct, he will default. Then you'll be golden as far as liability is concerned. Well, as I tell many clients, getting a judgment often is the easiest part of getting your money. So that's what I'm facing. Now, suppose we do have jurisdiction. Do you have an argument to make? Yes. If you want me to argue the merits, I certainly will. Well, not the merits, but the jurisdiction. You've told us we don't have jurisdiction, but do you have an argument for why we do? No. No. Because this case does not fall. Ten years ago, I would have. But if we do have jurisdiction, so we disagree with you and disagree with Professor Korsen and say we have jurisdiction under the client lawyer doctrine, you would say that the attorney's fees are not part of the cost, that the American rule precludes including attorney's fees as part of the cost unless they're specifically mentioned as part of the cost. Absolutely. That's the argument, isn't it? It's the argument, but then I have a secondary argument. Actually, in my case, it carries more weight because I've never engaged in a vexatious litigation in my life. And even if this court were to find that attorney fees are costs with whatever gymnastics, legal gymnastics you might use, because costs are costs and attorney fees are attorney fees under the American rule, you still have to find bad faith conduct, litigious conduct, vexatious conduct. We have a statute for that. I believe it's 28 U.S.C. 1927 that addresses that. So I don't view the Fourth Circuit as one of the more active circuits in the country. I don't know how your honors might find with regard to the issue of costs. Historically, attorney fees are not costs. It's not in the texture of the statute or the rule. But certainly many courts have found attorney fees are applicable. In fact, it's really an unsettled issue. You've got cases that say they have to be explicit or they're referenced to attorney fees. It would say costs, including attorney fees. That would do it. Correct. But the cases, I mean, there's many, many more that are cited, but it's an unsettled issue nationally. I think it's an unsettled issue in this circuit and in I believe there was an eastern district and middle district North Carolina cases that we cited that go both ways that the magistrate may have relied on. But in the highly unlikely events, since I don't have Judge Agee and his twin brother on this panel after reading his dissent in Cobra, it would be highly unlikely for you to find there is jurisdiction. But if you do find there is jurisdiction and that this lady who's been waiting for about five years can get her day in court, how will you rule on the issue of attorney fees? It's simply not applicable in a case where an FLSA complaint is filed. It is attacked with a 12B6 motion or a Twombly. The magistrate judge suggests he's probably going to grant it. Why don't we think about it? Maybe the better course is to dismiss and refile. The defendants ask for attorney fees at that time. The magistrate judge says no. So we voluntarily dismiss and refile. And then we get hit with attorney fees and stay until they're paid. And if we have to pay them, we'll have to take a look at what our remedies are. Does the court have authority to vacate the stay on your motion and then stay the payment pending resolution of the case? Certainly. As I said earlier. What, did you ask them to do that? No. Once we got this second rule. Once you got the field board, you filed a notice of appeal. Yes. I mean, I've never seen a district court judge in Kansas, we call them also district court judges in the state. I've never seen a district court judge, state or federal, do the job of an attorney when the attorney failed to do the job and segregate time. It would be like me filing my brief without citing it to the record and telling your honors you go find it in the appendix or tell your clerk to. For whatever reason, Judge Oettinger went ahead and by spec the bill of costs filed in the attorney fee application that clearly violated not only Magistrate Judge Howell's order, but it violated the North Carolina handbook on costs. And I put that in my opening brief. That's why we came straight up. We figured that we, without looking as closely as we should have at the collateral order doctor, we thought we're going to come up here and get this reversed because the prior order said we don't have the attorney fees. Collateral order doctrine has been a stumbling block for a lot of people in the federal court system. You know, I've had a lot of law clerks come to work for me that didn't learn anything about it in federal court. Maybe they ought to put it in the curriculum somewhere. Maybe Professor Korzen can help us with that. That's a fine suggestion. Nonetheless, I wanted, having looked at the issue, I thought it was incumbent upon me to tell this court that based upon the cases I read in the Supreme Court Authority and the Cobra decision, that even though this is critical to my client and to Mr. Smith and me, I cannot see. We appreciate your candor. It's commendable. And let's see what the other side has to say now. Maybe they've got some suggestions. But let me also add this last comment. This last comment, and that is this. Mr. Hunter and I talked, and he said, Joe, they've set this for argument. They've appointed amicus. You've just got to go out there because I didn't know whether or not I should simply give up the battle and file a notice with the court or whatever. And I'm relying on Mr. Hunter, who I understand is a classmate of Professor Korzen. He said, No, Joe, I've talked to the professor. Go out there and make the argument. Tell them what we did. And I've told you what we did. Thank you. Thank you very much, sir. Now it's your turn. Thank you, Your Honor. May it please the Court, John Korzen again here for the Wake Forest Appellate Clinic. And under Local Rule 46A, I'd like to introduce the two law students involved in this appeal. First, the Karen Fowler, and second, Andrew Parrish. And just to say about jurisdiction, when I was appointed, the Office of Stance Counsel mentioned there might again be a jurisdictional issue. And I apologize that we didn't raise it in our principal brief, but we certainly were happy to in the supplemental brief. And Ms. Fowler is happy to talk about jurisdiction, Rule 41, both. That's what I mentioned earlier. It happens a lot. In that Cobra case, I happened to be the author of the Cobra decision. No one had raised it in those briefs. We got supplemental briefs beforehand, I think, in that case. But anyway, it's not unique that folks don't know about that collateral order doctrine. That's the reason I'm curious about it. But it comes up more often than you'd think. I would say, just to digress on law school, I'd say about one-fourth of our class 3-Ls get exposed to the collateral doctrine, but only if they've taken the right elective class. So we may look at adding it in part of required courses curriculum somewhere. Thank you, Your Honor. Thank you very much, sir. Ms. Fowler. May it please the Court, my name is Karen Fowler on behalf of Court-Assigned Amicus in support of defendant's position on appeal. It is, of course, our first point today that the Court does not have jurisdiction under the collateral order jurisdiction doctrine. But if this Court does not have any further questions on the collateral order jurisdiction doctrine, we will go ahead and address the merits of the appeal itself in the Rule 41D issue. Why in this case different than COBR? I mean, COBR wasn't a Rule 41 case, these costs under Rule 41 and have to be paid ahead of time with a stay is a situation very burdensome on a litigant to go forward. Maybe that makes a difference under that third prong, maybe. Your Honor, it might be more burdensome, but it does not actually satisfy that third prong. The third prong is still not met. We suggest that the second and third prongs of the Cohen requirements are not met here, especially that third requirement. The third requirement, as stated in the COBR case, it's an assessment of the order, the type of order as a whole, not the particular order at issue and any injustice that that might cause. Well, we talked about it. It has to be an important issue, too, doesn't it? Correct. Or maybe the Supreme Court said that and we mentioned it, too. Yes. But that would be an important issue maybe in the context of Rule 41 because it doesn't appear that other courts have given it much sway. Maybe there's something ought to be out there about it. Your Honor, under COBR, again, it's the category of order that's analyzed, and the category of order here, the Rule 41d, costs and attorneys' fees, does not rise to the level of substantial public interest as those other categories that this Court and the Supreme Court has deemed sufficient to satisfy that third requirement. Those categories of order have included things such as sovereign immunity, absolute immunity, Eleventh Amendment sovereign immunity, and the protections of the Double Jeopardy Clause. Here's my problem, one of my problems. The procedural posture of this case contemplates that there will never be a final judgment. How can a district judge impose a cost order? Here it's, what, $25,000? It's reduced to $13,000, whatever. Right. Could a judge say, Plaintiff, under 41a, pay the defendant $100,000, and I'm going to stay your second action until you pay it? Your Honor. And you've got the parties coming in and saying, Well, Judge, it's been nine months. Plaintiff hasn't paid it. Just dismiss this dog. And the judge says, No. My order says you will pay it, and I intend for you to pay it. And unless and until you pay it, the case is going nowhere. I assume you would agree that at some point, 15 months, 18 months, 24 months, 12 years, the collateral order doctrine would kick in, and an appellate court would say, Okay. I mean, the district judge could die. And then, you see what I'm getting at? Yes, Your Honor. So why isn't an order of the character and nature of the order in this case sort of sui generis under the collateral order doctrine on element three? Your Honor, there are a lot of facets to that question. First and foremost, the thrust is the judge has control over the case, and so I don't know when there's going to be a final judgment in this case. Even the plaintiff doesn't know when there's going to be a final judgment. Right. In that case, it would be most prudent for the plaintiff to go ahead and pay the cost so that we can get to the final judgment. But what if they don't have any money? Right. But what if the plaintiff went in and said, I'm not going to pay it? Go ahead and dismiss it. Then that would be entitled to review, right? Be a final order. Correct. What if the plaintiff said, I'm not going to pay it, and you can hold me in contempt? Because I'm never going to be able to pay it. They could appeal the contempt citation. Correct, Your Honor. Get it reviewed that way. They could move to vacate the stay and hold the cost award in abeyance, pending the final order or something. If the court denied that, would that be a final order? The answer is probably no. And I think that sometimes we've seen some case law where there's been suggested that a writ of mandamus would be the proper remedy. Maybe a mandamus. At what point would you, when you get that, after you get, if they won't vacate the stay and hold it in abeyance and won't do anything, won't dismiss it, won't hold them in contempt, then they could ask for a writ of mandamus. Maybe that's the remedy. Yes. I think that they would ask for the writ of mandamus, that the stay be lifted so that the case can go forward. And it's important to note on the facts of this case that the plaintiff has never claimed an economic inability to pay the amount. So on the facts of this case, we simply don't have that issue. Well, they say that if they pay it, they'll never get it back because the defendant is impecunious. Right, and that, Your Honor, would be a contingent and speculative inability to not get that payment back. Maybe they could pay it like Mr. Cassell suggested, pay it into the court. Yes, Your Honor. And they hold it or post a bond or something. Yes, Your Honor. Maybe alternatives to it. But we don't have much leeway about expanding the collateral order doctrine. No, Your Honor, and the Cohen doctrine cannot be expanded to the point of disregard for the finality rule that's been imposed by Congress in Section 1291. And because two of the three requirements are not satisfied under the Cohen standard and the Cobra standard as articulated by this court just last year, there is no collateral order jurisdiction here today. Unless there are any other further questions. But you were going to tell us why, if there were jurisdiction, why costs include attorney's fees. Yes, Your Honor. So you're going to argue that the American rule doesn't apply to Rule 41 proceeding? Your Honor, our argument is that the— That's an upstream battle, too. Our argument today is that the American rule, the exceptions to the American rule as articulated by the Supreme Court in the Alaska Pipeline case and the Keytronic case are interrelated exceptions that apply to the Rule 41D context. And I will address each, the context of the rule itself and the purpose of the rule as those interrelated exceptions. I will address them in turn. But the purpose of the rule— Go ahead. Well, Your Honor, I can address— You've got some cases out there. You've got district judges saying that costs under 41 does include attorney's fees. And you've got a couple of circuit courts that are split, right? Yes, Your Honor. And the majority of circuits, too, have addressed the issue, have addressed it in the affirmative to say that it does include attorney's fees. The majority of what? The majority of circuits, too, have actually reached the issue. And how many circuits are those? Well, there's four that have actually reached it and two of which, the 8th and the 10th, have said, yes, it includes attorney's fees. The 7th has said yes but has taken a middle road approach to say that only if the underlying statutory cause of action provides for attorney's fees then they may be included. And then it is the 6th Circuit standing alone that says attorney's fees are not includable. So, really, it's two to two. The 7th Circuit is saying it has to say so. Right, but in those circumstances— There's no majority. There's a direct split, two to two. A majority in the sense that the 10th and 8th say yes always. Well, didn't the 10th just say we follow the 8th without analysis? They did. It was a very cursory opinion. So it's one to one, isn't it? We're dwindling them down slightly, sir. But needless to say, this is an issue that has not been reached often. But we asked the court today if we were to reach the merits of the action to determine that attorney's fees are appropriate under Rule 41D because of the context of Rule 41 as a whole and the purpose of the rule itself. But our authorities say the provisions have to be explicit. Justice Judge Wilkinson wrote an opinion here three or four years ago and said that the American rule applies unless it's explicit otherwise. Right? Statutory provision that explicitly says including attorney's fees. Your Honor— How do you get around that? What's the name of that case? I don't have the particular name of that case that you're referring to. Judge Wilkinson wrote it. I do know that under the Keytronic case by the Supreme Court, that if the statute itself otherwise shows an intent to provide for attorney's fees, then there need not be explicit reference to attorney's fees in the statute itself. And that brings me to my first point, that the intent for attorney's fees to be included as costs is clearly evidenced by the rule's interpretation as a whole. This might be the gymnastics route that opposing counsel was referring to, but if we look at Rule 41 as a whole, Rule 41A1 refers to where a plaintiff may voluntarily dismiss an action as of right before the defendant has filed an answer or a motion to dismiss. And this voluntary dismissal as of right is without prejudice, and the court cannot condition that dismissal. But under Rule 41A2, a plaintiff may voluntarily dismiss an action after the defendant has answered or filed a motion for summary judgment, only upon stipulation of all parties involved or by court order. And in that case, the court may condition the dismissal. And as this court explained in the Davis case in 1987, the court has wide discretion in determining what conditions must be satisfied in order to take… This was a 41A1, right? This was a 41A1 dismissal. So the court has nothing to do with it, right? Has nothing to do with the dismissal, Your Honor, and that's exactly where Rule 41D comes into play. Rule 41D, by its plain language, says that where a plaintiff has dismissed voluntarily and then decides to refile a second complaint against the same defendant under the same cause of action, that the court may then condition the refiling. So Rule 41D, in this order, speaking specifically to your point, Rule 41D serves a logical and necessary gap-filling function. A plaintiff should not be able to take that voluntary dismissal and not be held accountable for what occurs in dismissing the first action and then refiling it. Thus, so because the court has the discretion to condition the dismissal under Rule 41A2 upon payment of attorney's fees, the court should have an equal level of discretion in conditioning the refiling. Why? Well, this is… It's A1 and there's A2. That is correct. Why should we import A2 into A1 when it comes to attorney's fees in light of the strong tradition under the American Rule? Well, Your Honor, that goes to the purpose of the rule itself, and that is to deter vexatious litigation, to prevent forum shopping, and to prevent a party from taking an adverse ruling in order to gain a tactical advantage. Did the district court deny the refiling then? No. The second filed complaint, is that what you're asking about? Yes. No. They said that you are allowed to go forward with your second action as long as you pay the cost and attorney's fees that were incurred in defending the first action. Well, but the second action had already been filed before the district court imposed this order. That is correct, because defendants moved for the cost and attorney's fees. So it was almost kind of punitive. Well, there is the deterrence factor that comes into play under Rule 41B. What is deterred here? If the rule says you can dismiss freely, pre-answer, what is there to deter? Your Honor, it's this idea of they are allowed to take that second bite of the apple, but that wasn't a license to vex and a license to use the court structure in a second way in order to Where is the findings of vexatiousness here? Your Honor, we can look specifically to pages 87 of the appendix. There, Judge Reidinger explained that the end result of such conduct is repeated litigation of the same claim against the same defendant. That is vexatious litigation, end quote. He was specifically referring to plaintiffs' attempt to avoid an adverse ruling in the first action and refile a complaint in order to gain a tactical advantage. And that conduct of refiling to gain a tactical advantage and using the court's resources once again and continuing to cause the defendant to incur costs and attorney's fees Under 15, a plaintiff has an absolute right to amend without leave of court, right? Correct. The plaintiff didn't do that here, right? Correct. So even in the face of a motion to dismiss, under Rule 15, a plaintiff could walk into the hearing on the motion to dismiss and file an amended complaint, right? That is correct. Instead of doing that here, the plaintiff took a 41A dismissal. Would you have us treat those two scenarios differently? You wouldn't say that a 15A amended complaint on the day of the hearing was sanctionable, would you? No, Your Honor. Most district judges would simply say, okay, we're going to treat the motion to dismiss filed as to the original complaint as if it had been filed to the second, to the amended complaint. In other words, you just treat the motion as going to the second? I don't understand what's going on here, frankly. Your Honor, under Rule 41D, there's something to suggest that there is something per se abusive in taking a voluntary dismissal and then refiling a second action. Well, why is it not per se abusive? As you agree with me, under Rule 15, you could walk into the hearing with your amended complaint. That would be under that first action, and that would be a continuation of the first action in the sense that it would not be a second taxation upon the court's resources as well as the defendant's resources. What's the taxation on the court? The court makes more money when you file a new action. The plaintiff has to actually pay an additional filing fee. I'm really at a loss to understand. It looks to me like maybe this thing is just a condition on the refiling. That is correct, Your Honor. All right, maybe credit order doctrine has nothing to do with it. Maybe we have to review whether the court abuses discretion in imposing a condition on the refiling. Well, again, it would be whether the attorney's fees were involved, and that goes to the second requirement under the Cohen standard if we jump back to jurisdiction. That would be that there is not an order itself here that is completely separable from the merits of the plaintiff. But is repeated litigation vexatious? In some cases, it has been held to be vexatious, and it is very case-specific. And what we have here is that the plaintiff took the voluntary dismissal to avoid it. Is litigation always vexatious? I hate to say and always, Your Honor. Well, that's what the district judge said. Yes, it's the repetitive litigation. Repeated litigation of the same claim against the same defendant is vexatious litigation. But in the context of refiling or amending, you wouldn't necessarily say it's vexatious, would you? Your Honor, vexatiousness can be looked at as an umbrella term. Or testifying or maybe particularizing the claim. Is that what they did here? Could you repeat your question, Your Honor? Try to recast the claim and give more particulars to satisfy Twombly or somebody? That was part of it, but there was also, if we look to pages 127 of the appendix and 128, there Magistrate Judge Howell indicated that he would be inclined to do an M&R to Judge Reitinger, telling him to dismiss the original complaint. The inclination was based on grave concerns of the sufficiency of the complaint, namely whether Plaintiff was an exempt employee under the FLSA provisions. Plaintiff then decided to dismiss her action and refile it immediately. What page are you on? This is pages 127 to 128 of the appendix filed by Appellate. So you can see, I believe it's on page 128. Magistrate Judge Howell said, I don't know whether or not allowing the amendment is going to solve any problems that Plaintiff has got, because what Mr. Parsons pointed out, she may be the person described in there as being exempt. So basically the Plaintiff here was faced with a motion to dismiss that was likely going to go forward, and even if the motion to dismiss weren't to go forward, there were grave concerns with the sufficiency of the amended complaint as well. That being that it may be futile and then the motion to amend would not have been granted under the FOMIN factors anyway. And when faced with this risk of an adverse ruling, the Plaintiff decided, instead of taking that adverse ruling, to simply dismiss her case, which she had the right to do so. But in order to have that free bite, that free second bite of the apple, the Court has wide discretion under Rule 41D to impose payment of costs and attorney's fees that were incurred. The rule says costs. It does, Your Honor. And you added attorney's fees, and the Court added attorney's fees, but the rule just says costs. Go ahead. The rule does, if you would like me to specifically address that. The rule says costs. The rule does say costs, Your Honor. But if you would like an analogous example, this Court has interpreted the Federal Rule of Appellate Procedure, Rule 38, where the term only costs is used there as also being able to include attorney's fees. So even though the word costs is the only word that's used here, that umbrella term of costs may include attorney's fees in interpretation. For these reasons, attorney's fees are proper under Rule 41D, and the District Court properly exercised its discretion in assessing the total amount to be paid. What's the case on that Rule 38? You got a case on that? I do, Your Honor. That would be the Branch case in 1992 and the Bertini case in 1994. What's the site? I don't have the full site, Your Honor, but I'm happy to file that afterwards if need be. What does that appellate rule cover?  Rules 38. Costs on appeal? No, not costs on appeal. You never get attorney's fees. It's costs on appeal. No, Your Honor. What's that rule? It says if a court of appeals determines that an appeal is frivolous, it may. Frivolous. See, we keep going back to what's frivolous and vexatious. But filing an amended complaint is vexatious? Your Honor, not filing an amended complaint. That's functionally what we have here. It is. But there is something to say under Rule 41D by its plain terms. By Congress even providing that subsection itself. Do you agree that this is not frivolous? No, Your Honor, this is not frivolous, but it is vexatious. Do you think there's a difference? Vexatious is an umbrella term, and it encompasses the particular facts of this case. Would an amended complaint have been vexatious? Not an amended complaint. But a second filing to dismiss the person and file a second one is vexatious. In the same circumstance. I mean, that doesn't make any sense. Your Honor, of the district courts to have considered where, we have done a cursory search of this, and any district court that has found where the plaintiff has taken an adverse ruling, or has taken a dismissal in order to avoid an adverse ruling, and then refiled a second action. The adverse ruling here to be what? Denial of the motion to amend? It would have been granting the motion to dismiss, and then if that motion to dismiss for some reason had not gone forward, it would have been denial of the motion to amend because it would have been futile. But they didn't have to file a motion for leave to amend, right? You get to amend once as of right. But the plaintiff in this case had missed that timeline, had missed that opportunity. Had there been an answer filed? There had not been an answer filed, but. What's the deadline? You mean under the local rule? Correct. And the plaintiff had missed that. What about the big rule? They had missed the time to amend as of right. So that. Under the local rule, not under the big rule. The big rule. The big rule doesn't have a. They had. The only time limit is pre-answer, right? Correct, but the motion to dismiss. They can't have a local rule that's inconsistent with the rules of civil procedure. Your Honor. Can you? I don't have a particular page of the appendix to point to, but the plaintiff did admit. Local rules have to be consistent. Correct, Your Honor. And so here, looking at the cases where there has been a plaintiff who has taken a dismissal to avoid an adverse ruling and simply refiled, that has constituted vexatious litigation. In this court, in the Thomas B. Fulton case in 2008. If the district court here was wrong in characterizing what happened here as vexatious, would your position be different? Your Honor, it may have to be. If you find that this was not vexatious, then under. No, if it was wrong. So you assume that. Okay. Assume it's not vexatious. You say you'd have to take a different position. Yes, Your Honor. In which case, what would happen to the attorney's fee award? Your Honor, because the actual amount of the award was mostly attorney's fees, then plaintiff would probably not have anything to pay in this case. You'd have to vacate the attorney's fee award or the cost award and vacate the stay and let it proceed if it's not vexatious. Yes, Your Honor. That correct? Your Honor, I see I've run out of time. If there's jurisdiction. If there's jurisdiction. If I can. If the collateral order rule in some way is distinguishable. Right. And, Your Honor, if I could end on just one brief thematic note. That is that if the plaintiff is allowed to take that voluntary. If the district court declines to permit the filing under Rule 41 what? The refiling. Could you repeat the question one more time? If the district court declines to authorize a refiling under Rule 41, blank. Right. Is that an appealable order? Well, I think it would be a dismissal with prejudice. Because in that case the amendment would have been futile. In which case it would be appealable. Absolutely, Your Honor. And if I can end on one brief thematic note. That is if the plaintiff takes that voluntary dismissal. And is allowed to pretend as if that first action didn't happen. Then the defendant should be allowed to be made whole again. And likewise pretend as if that first action did not happen. For these reasons amicus respectfully requests that this court affirm the district court below. Thank you. Do you want us to affirm it or dismiss it? We'll dismiss it under the collateral order. Do you want to dismiss? Yes, Your Honor. Thank you. Thank you very much. Mr. Cassell, do you want to amend anything you said earlier? No, but I want to clarify one thing, Your Honor. I live in the, not to be offensive, but I live in the real world. I've been practicing law for 40 years. Dismissals, voluntary dismissals and refilings happen hundreds of times across this country. And I've done it many times. I've been in cases where there's been three and four amendments filed. But I want to make two points in rebuttal. First of all, the only adverse ruling we were facing was a dismissal under Twombly. That could not have been with prejudice. It was without prejudice. Had Mr. Smith, Mr. Hunter, said, yeah, go ahead, enter your order, judge, do what you want to do, and he dismissed it, we would have been refiled. There's absolutely nothing different between getting an adverse ruling that you fail on a Twombly. You say, when you say refile, you mean file an amended complaint? No. You mean file a second action? Well, I meant file an amended complaint or filing a second action. They would have been the same. We would have done the same thing. In other words, by withdrawing, as the magistrate suggested, but even if he had not suggested it, we refiled what we would have filed anyway had we lost the motion to dismiss. So there was the motion to amend. I filed that. That was my idea, to show the court. I've filed over 20 of these cases, and I never faced this. I was showing the court how much evidence I had, which we put into the refiling, by the way. This is the amended complaint. It's what I had proposed, Your Honor, but the magistrate himself at the hearing said, I'm not going to take that up, and he was speaking in digit. But did you submit a proposed amended complaint? At that time, yes. But he said that he was going to rule it futile? No. He did not. He said it's not before the court. All right. And the only thing before the court was the 12B6 motion. And even if we allow that to be entered by the court, we still would have done the same thing. Did you propose an amended complaint in the record? Yes. Did the magistrate forecast about the likely future of your amended complaint? Judges often opine like that. He did. He did, didn't he? Yeah. Tell the court what the magistrate said about it. Well, I think he pretty much said what was quoted by Amicus. They were raising this issue of whether or not she was exempt. He didn't think too much of it, the amended complaint. Is that right? I wasn't there. I just have the record. That's what I'm saying. Yeah, he made the comment. That's correct. Exactly. His comment was the negative comment about the future of it, that it's unlikely that it would resolve the issues that you have. But even if that she's an exempt employee? That's the reason for Judge King's question. So he opined on a rule of law? That's correct, because that would have been an exempt issue under the FLSA. But even if he had taken up the motion and denied it, it still would not have been. But if he made a legal ruling and kept you out because of a legal ruling, you could have appealed that. Certainly, or it would not have. He said she's not an exempt employee, or whatever it is. That's correct, and it would not have been with prejudice. It would have had to have been without prejudice in any event. But I want to then lastly make this statement with regard to this issue of vexatiousness. We filed, refiled with the same plaintiff. We added more of the defendants, Hodges Shell Corporations, and filed the same claim under the FLSA. And we have been accused of being vexatious. What is vexatious to you? Bad faith conduct, form shopping. The district judge said it wasn't here bad faith. He excluded bad faith. Well, there wasn't any. He had to. But vexatiousness is bad faith. Well, he admitted that. Right. I could have refiled this case in the Charlotte Division with Betty Gosnell. We opted if I wanted to, if I wanted to play some games. But I might find myself right back up here if I had done that. We, Caucasian Council, did not do that. We refiled, expanded our allegations to satisfy Twombly, to satisfy the enterprise exemption and the fact that Betty Gosnell was not an exempt 24 hours a day. And there was no discovery. Oh, no, no discovery. What's what? And so, essentially, the courts below said that you pledged yourself out of a cause of action twice. I guess that's the network. That's what the court is saying. With no discovery on an issue as one that can be as complicated as who is exempt under the FLSA, which continues to be litigated all over this country every day, courts are all over the place because the statute is a mess and the Department of Labor changes its mind every couple of years. In fact, the Supreme Court just last week, right, said the D.C. Circuit couldn't impose some kind of heightened notice and comment requirement on the Department of Labor to change its regulations, right? And so now we've got a judge saying, well, I've looked at your complaint, I've looked at your amended complaint, your proposed amended complaint, and I can tell this lady is exempt. And therefore, you get sanctions for pursuing your clients? It's just beyond me. I don't get it. But keep in mind that on the motion to amend, he never really addressed it. He was just speaking in dictum. Well, it wasn't dictum. It was just the judge's musings because there really was never a ruling by the magistrate judge or by the district judge. So even the whole question of who's exempt hasn't been answered in this case. That's correct. And you must be the worst lawyer ever to come out of Kansas. So your amended complaint should have been filed and you should have gone forward. I believe so in the underlying action, not in the current action, Your Honor. That's correct. I just want to close by saying what will happen down there, I don't know. The court is throwing about some dismissals and final orders and mandamus. I mean, I'm more than happy to do that if it brings you back here to get a just ruling in this case. I have a question for you, just one. For the record, do you withdraw your appeal? That's the question. It's a simple question, yes or no. For the record, do you withdraw your appeal? Yes or no. That was the question. Counsel, yes or no. Then you can respond, but I think a yes or no is very simple. Yes. Okay. You withdraw the appeal. Yes. And if we grant that, that's the end of it. We're back in the court looking at mandamus, dismissal. That was the same issue the magistrate charged us with. Do you want to dismiss or not? Because I'm going to. That's what the magistrate told us. Thank you, Your Honor. Thank you, Mr. Cassell. We appreciate it. Good to have you here. And, again, Professor Corzine and your staff are fine students. We appreciate all your help today.
judges: Robert B. King, Roger L. Gregory, Andre M. Davis